UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KYRA BELCHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:22-CV-95-ACL ) |
| MARTIN O'MALLEY,[1] Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**<u>MEMORANDUM</u>**

Plaintiff Kyra Belcher brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Belcher's severe impairments, she was not disabled as she was capable of performing work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

I. Procedural History

Belcher protectively filed her application for SSI on November 1, 2019.  (Tr. 249-53.) She claimed she became unable to work on May 1, 2018, due to post-traumatic stress disorder ("PTSD"), bipolar 2 disorder, anxiety, depression, back pain, degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), and high blood pressure.  (Tr. 249, 273.)  Belcher was 50 years of age at her alleged onset of disability date.  (Tr. 22.)  Her application was denied initially.  (Tr. 200-04.)

Belcher's claim was denied by an ALJ on January 28, 2022.  (Tr. 11-24.)  The Appeals Council denied Belcher's claim for review on November 2, 2022.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Belcher first argues that the ALJ "did not properly consider whether the claimant met 'acceptable medical source' to establish the existence of a medically determinable impairment, and erred in evaluating the treating physician's opinion and that the ALJ's subjective symptom evaluation was flawed."  (Doc. 9 at 13.)  She next argues that the ALJ erred "by discounting the opinions of Plaintiff's former treating psychiatrists in favor of the opinion of a non-treating, non-examining, state agency consultant."  *Id.*  Belcher finally argues that the ALJ erred "by discounting the opinions of Plaintiff's community support worker in favor of the opinion of a non-treating, non-examining, state agency consultant and erred in penalizing Belcher for conservative medical treatment."  *Id.* at 16.

II. The ALJ's Determination

The ALJ first found that Belcher has not engaged in substantial gainful activity since her

alleged onset date of May 1, 2018.  (Tr. 13.)  In addition, the ALJ concluded that Belcher had the following severe impairments: mild lumbar spondylosis; obesity; major depressive disorder; bipolar disorder; and generalized anxiety disorder.  (Tr. 14.)  The ALJ found that Belcher did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 15.)

     As to Belcher's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) in that she can lift 20 pounds occasionally and 10 pounds frequently; can stand and walk for a cumulative total of 6 hours during an 8-hour workday, with ordinary breaks; can sit for a cumulative total of up to 8 hours during an 8-hour workday, with breaks; would need the opportunity to make a postural change when performing seated work, every 60 minutes, which can be performed at the work station without being off task and would consist of the ability to stand briefly for a period not to exceed three minutes; can occasionally climb ramps and stairs, but can never climb ladders and scaffolds; can occasionally stoop, kneel, and crouch, but can never crawl; cannot perform work that would require reach, handle, finger, or feel on more than a frequent basis; cannot work in environments that result in concentrated exposure to extreme cold or vibration; never work at unprotected heights, or around dangerous moving machinery such as forklifts; can understand, remember, and carry out simple instructions; can maintain concentration, persistence, and pace sufficient to perform work that consists of simple, routine tasks, requiring only simple workplace judgments, in an environment that does not require interaction with the public, and requires no more than occasional interaction with co-workers; can tolerate any level of interaction with supervisors; can recognize and avoid hazards; can adapt to changes; and can respond appropriately to criticism while performing the simple routine tasks in the socially limited work environment just described.

(Tr. 17.)

     The ALJ found that Belcher was not capable of performing her past relevant work, but

could perform other jobs that exist in significant numbers in the national economy, such as production assembler, small products assembler, and packing header. (Tr. 23.) The ALJ therefore concluded that Belcher was not under a disability, as defined in the Social Security Act, since November 1, 2019. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on November 1, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 24.)

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

  1.  The credibility findings made by the ALJ.

  2.  The plaintiff's vocational factors.

  3.  The medical evidence from treating and consulting physicians.

  4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

  5.  Any corroboration by third parties of the plaintiff's impairments.

  6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Plaintiff's claims relate to the ALJ's evaluation of the opinion evidence and resulting RFC determination. Specifically, Belcher challenges the ALJ's findings regarding her mental impairments. As such, the Court's discussion will focus on Belcher's mental impairments.

### A. Evaluation of Opinion Evidence

Belcher first argues that the ALJ did not properly consider whether "the claimant met 'acceptable medical source' to establish the existence of a medically determinable impairment." (Doc. 9 at 13.) The nature of this argument is unclear and is not further developed in Belcher's brief. Because Belcher's third argument pertains to Belcher's community support worker,

Lauren Ihms, found by the ALJ to not be an "acceptable medical source," the undersigned will construe Belcher's argument as challenging the ALJ's evaluation of Ms. Ihms' opinion.

In a letter dated February 24, 2021, Ms. Ihms stated as follows:

> I have worked as Kyra Belcher's Community Support Specialist at both Preferred Family Health and Mark Twain Behavioral Health. Kyra is compliant with services and reaches out when she feels she needs to. Kyra has mental and physical diagnoses that cause her to be unable to maintain employment. Kyra reports not being able to get through a load of dishes and that sitting hurts her hip and standing too long causes her feet and hands to go numb. Kyra reports experiencing anxiety that interferes with her functioning and highs and lows with Bipolar. Highs and lows with Bipolar and anxiety can interfere with maintaining employment.

(Tr. 674.)

Ms. Ihms also testified at the administrative hearing conducted on September 14, 2021. (Tr. 120-23.) Ms. Ihms stated that she began working with Belcher in 2018 at Preferred Family Healthcare, and worked with her again when Belcher transferred her care to Mark Twain Behavioral Health. (Tr. 120.) With regard to her credentials as a Community Support Specialist, Ms. Ihms stated that she has a bachelor's degree in psychology. (Tr. 121.) She testified that she sees Belcher every week, usually in Belcher's home, although she occasionally takes her to utilize community resources. *Id.* For example, Ms. Ihms testified that she recently took Belcher to a community center to redeem a clothing voucher. (Tr. 122.) Ms. Ihms stated that her weekly in-person sessions usually last thirty minutes to an hour. (Tr. 123) She explained that she also speaks with Belcher on the phone if necessary. *Id,*

The ALJ stated that he had considered Ms. Ihms' opinion that Belcher's diagnoses cause her to be unable to maintain employment and found it not persuasive. (Tr. 21.) The ALJ first stated that Ms. Ihms is not an acceptable medical source to diagnose Belcher with severe impairments. *Id.* He next noted that an opinion that a claimant is unable to work is not

dispositive, as the ultimate issue of disability is reserved to the Commissioner. *Id.* The ALJ also found that Ms. Ihms' opinion was inconsistent with "the overall evidence of record which fail to document significant, ongoing abnormalities on examination that would preclude the claimant from engaging in SGA level work." *Id.* Additionally, he noted that Ms. Ihms' opinion was inconsistent with the findings of the state agency psychologists. (Tr. 22.) Finally, the ALJ stated that Ms. Ihms' opinion was based in part on Belcher's subjective reports. (Tr. 21-22.) He noted that Belcher's reported activities of daily living were inconsistent with Ms. Ihms' opinion. (Tr. 22.)

Claims filed after March 27, 2017, like Belcher's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how he considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how he considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10,

2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

Belcher appears to challenge the ALJ's finding that Ms. Ihms is not an "acceptable medical source." Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902(a)(1) & (2). It also includes licensed advanced practice registered nurses and physician assistants for issues within the scope of their licensed practice. 20 C.F.R. § 416.902(a)(7) & (8). Nonmedical sources include public and private social welfare agency personnel. *See* 20 C.F.R. § 416.902(a). Only an accepted medical source can diagnose or establish the existence of a medically determinable impairment through objective medical evidence. 20 C.F.R. § 404.1521. But RFC is determined by considering all relevant evidence, including statements from "medical sources" who are not "acceptable." 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1513(a)(2).

The ALJ accurately noted that Ms. Ihms, a community support worker, was not an acceptable medical source capable of diagnosing Belcher. The ALJ, however, continued to evaluate Ms. Ihms' opinion under the regulations. First, to the extent that Ms. Ihms provided an opinion that Belcher was disabled, such a legal determination is reserved to the Commissioner and the ALJ appropriately did not consider such statements persuasive. *KKK ex rel. Stoner v. Colvin*, 818 F.3d 364, 371 (8th Cir. 2016). Second, the ALJ appropriately found that Ms. Ihms' opinion was based in part on Belcher's self-reported limitations, which were not consistent with the record. For example, Ms. Ihms stated that Belcher "*reports* experiencing anxiety that

interferes with her functioning," yet the record shows Belcher provided childcare for her grandchildren, concentrated to work on a quilt, briefly used a dating app, attended community college classes, and attended church.  (Tr. 674, 108-10, 424, 696, 700, 704.)  Accordingly, the ALJ did not err in evaluating Ms. Ihms' opinion.

Belcher next argues that the ALJ erred in discounting the opinions of treating providers Geoff Westhoff, APN, and Rodney Yager, M.D., and finding the opinions of the state agency psychologists persuasive.

As to Dr. Yager's treatment records, Belcher notes that he provided "ongoing medical treatment for [her] diabetes/blood sugar, hypertension, osteoarthritis, asthma and thyroid." (Doc. 9 at 16, 18.) Belcher complains that the ALJ "erred in penalizing [her] for conservative medical treatment." *Id*. at 16-17.  Belcher does not claim that the ALJ failed to evaluate her physical impairments.  *Id*. at 14, 16-18.  As Defendant points out, evidence Belcher sent to the Appeals Council after the ALJ's decision includes Dr. Yager's treatment notes from October 2021 and March 2022.  (Tr. 34-38, 50-54.)  These treatment notes are summarized as follows: Belcher saw Dr. Yager to establish care on October 21, 2021.  (Tr. 50.)  She complained of right foot pain after landing on her foot when walking down stairs.  (Tr. 52.)  Belcher had a history of diabetes, but reported that she was "doing well" on medication and was not having any problems.  *Id.*  She also had a history of hypothyroidism for which she was taking medication and was not having any problems with fatigue.  *Id.*  On examination, Dr. Yager only noted tenderness of Belcher's right foot.  (Tr. 52.)  X-rays revealed an oblique mid shaft fracture of the right fifth metatarsal, for which Dr. Yager prescribed a flat soled shoe.  (Tr. 53.)  On March 9, 2022, Belcher reported experiencing a hypoglycemic episode.  (Tr. 36.)  No abnormalities

were noted on examination.  *Id.*  Dr. Yager instructed Belcher to increase her protein intake and make sure she eats three meals a day.  (Tr. 37.)

The Appeals Council determined that this evidence was either insufficient to change the outcome of the ALJ's decision or related to a time period after the ALJ's January 28, 2022 decision.  (Tr. 2.)  The Appeals Council therefore denied Belcher's request for review, leaving the ALJ's decision as the final decision.  (Tr. 1.)  Because the Appeals Council did not review the ALJ's decision, and because Belcher does not challenge the Appeals Council's evaluation of the evidence or denial, the Court will only review evidence available to, or discussed by, the ALJ.  § 404.970(a)(5); *see Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).  Thus, Belcher fails to point to any error in the ALJ's failure to discuss Dr. Yager's treatment notes.

Belcher similarly fails to demonstrate the ALJ erred in considering her conservative treatment when determining her RFC.  When a plaintiff's pain or limitations are managed with medication and do not require surgical intervention, a less limiting RFC is appropriate.  *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016).  The Eighth Circuit has found that a "relatively conservative course of treatment" may constitute the "most persuasive medical reason" an ALJ offers in support of her findings as to the plaintiff's RFC.  *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022).

Belcher next argues that Mr. Westhoff's notes reveal that Belcher "suffered from abnormal behaviors," and reflect the "waxing and waning natures of social interactions, sleep problems, PTSD, anxiety and depression."  (Doc. 9 at 14.)  Mr. Westhoff provided mental health treatment at Mark Twain Area Counseling Center in Hannibal, Missouri, from January 2018 until July 2018; and from July 2020 through August 2021 for diagnoses of bipolar II disorder, generalized anxiety disorder, PTSD, and a history of drug and alcohol abuse.  (Tr. 346-

99, 752-811.)  Mr. Westhoff did not, however, provide an opinion on Belcher's limitations resulting from her mental impairments.

The ALJ summarized the treatment notes of Mr. Westhoff and other providers, noting that mental status examinations at times note Belcher had abnormal insight and judgment with anxious mood, yet generally reveal her to be alert and oriented, cooperative, not anxious, exhibiting normal behavior, a normal affect, logical and organized thought process, no delusions or hallucinations, normal cognition, normal perception, average intelligence, normal insight and judgment, average eye contact, normal memory, and adequate attention and concentration.  (Tr. 19, 365-66, 403, 418, 433, 473-74, 602, 634, 657-58, 713, 741-42, 748, 761-62.)  The ALJ next stated that Belcher's mental health treatment has been generally conservative, largely consisting of counseling and routine psychotropic medication management.  (Tr. 19.)  He pointed out that Belcher has reported improvement with conservative medication management.  *Id.*  For example, Belcher reported to Mr. Westhoff she was "doing really good now" and that her medication regimen was "working well" on March 22, 2018.  (Tr. 19, 363.)  On April 11, 2018, Belcher reported that the previous three weeks had been "amazingly great," and she was "doing Voc rehab now."  (Tr. 365.)  In November 2018, Belcher reported to a different provider that her psychiatric symptoms have improved with medication.  (Tr. 401.)  In February 2019, Belcher reported that she was attending classes at a community college.  (Tr. 416.)  Belcher stated that things were "going well," she was attending class, and her anxiety was "mild" in March 2019.  (Tr. 424.)  In September 2020, Belcher reported to Mr. Westhoff that she was having "some really bad days," possibly due to "the situation" of recently being released from prison.  (Tr. 761.)  On examination, Mr. Westhoff noted he was unable to assess Belcher's appearance or affect because he was speaking to Belcher on the telephone, but Belcher was

distressed, her speech was normal, her thought process was normal, she did not have delusions, her insight and judgment were impaired, and her cognition was normal.  (Tr. 762.)  Belcher was similarly noted to have "situational anxiety" in June 2021, due to financial and legal issues.  (Tr. 746.)  The examining provider, Jalaj Ahuja, M.D., found Belcher was calm and cooperative, her psychomotor activity was normal, her eye contact was fair, her mood was described as "good," her affect was euthymic, her thought process was organized, her attention and concentration were adequate, her language was fair, her insight and judgment were limited, and her cognition and memory were normal.  (Tr. 747-48.)  Dr. Ahuja diagnosed Belcher with mild major depressive disorder with anxious distress, and stated Belcher was "overall stable since last visit, does note some issues with depression however manageable.  Still high anxiety however."  (Tr. 749.)

After summarizing Belcher's mental health treatment, the ALJ discussed the opinions of the state agency psychologists, Marc Maddox, Ph.D., and Steven Akeson, Psy.D.  (Tr. 21.)  Dr. Maddox completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on May 17, 2020.  (Tr. 166-67, 170-71.)  Dr. Maddox stated that Belcher had a history of mental impairments and illicit drug abuse, had multiple incarcerations, and was re-incarcerated during the course of her claim, beginning on December 18, 2019.  (Tr. 167.)  Dr. Maddox found that, from the filing of her application in November 2019 through her incarceration, Maddox denied illegal drug use, had a normal mental status, was clinically stable on medication, and had no more than mild functional restrictions.  *Id.*  He found that Belcher had moderate limitations in her ability to interact appropriately with the general public.  (Tr. 170.)

Page **16** of **19**

Dr. Akeson completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on November 10, 2020, after reviewing additional evidence.  (Tr. 185-87, 191-93.)  Dr. Akeson noted that medical encounters at the Department of Corrections revealed a normal mood and affect, and no mental health treatment was received.  (Tr. 186.)  Belcher resumed treatment at Mark Twain Area Counseling in July 2020, after her release, where her medications were adjusted.  (Tr. 186, 756-70.)  Dr. Akeson concluded that Belcher's mental conditions were under adequate control and undergoing medication adjustments.  (Tr. 186.)  He expressed the opinion that Belcher was moderately limited in her ability to interact appropriately with the general public, and retained the ability to perform simple work.  (Tr. 187, 192.)

The ALJ acknowledged that Drs. Maddox and Akeson did not have the benefit of examining Belcher, yet noted that they are specialists familiar with the Social Security rules and regulations regarding disability.  (Tr. 21.)  He stated that their opinions are "mostly consistent" with the overall record, including generally conservative treatment, notations that her conditions were under adequate control, her lack of psychiatric hospitalizations during the relevant period, and indications that her symptoms were sometimes caused by situational stressors.  *Id.*  The ALJ concluded that, based on the overall evidence of record, including the opinion of Ms. Ihms, Belcher has greater imitations than those found by Drs. Maddox and Akeson.  For example, he stated that Belcher is limited in her ability to understand, remember, and carry out only simple instructions; and has social limitations.  *Id.*  He therefore found the opinions of Drs. Maddox and Akeson "mostly persuasive."  *Id.*

Belcher argues that the ALJ erred in relying on state agency psychologists' opinions while rejecting the opinion of treating psychiatric nurse practitioner Mr. Westhoff.  As previously discussed, Mr. Westhoff did not provide an opinion regarding Belcher's functional

limitations. In determining a plaintiff's RFC, an ALJ may rely on medical opinion evidence from state agency consultants. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (noting that federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation); *see also Casey v. Astrue*, 503 F.3d 687, 8, 503 F.3d at 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."). Moreover, the ALJ did not simply adopt the opinions of Drs. Maddox and Akeson. Instead, he found that Belcher was more limited, and incorporated restrictions in the RFC that took into account Ms. Ihms' testimony and the treatment notes of Mr. Westhoff and other providers.

> The ALJ made the following determination regarding Belcher's mental RFC
>
>> can understand, remember, and carry out simple instructions; can maintain concentration, persistence, and pace sufficient to perform work that consists of simple, routine tasks, requiring only simple workplace judgments, in an environment that does not require interaction with the public, and requires no more than occasional interaction with co-workers; can tolerate any level of interaction with supervisors; can recognize and avoid hazards; can adapt to changes; and can respond appropriately to criticism while performing the simple routine tasks in the socially limited work environment just described.

(Tr. 17.)

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909,

927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The undersigned finds that the ALJ's mental RFC determination is supported by substantial evidence on the record as a whole. In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record. *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions). He considered Belcher's severe mental impairments when restricting her to only simple, routine work in a socially limited environment. The ALJ's RFC determination is *more restrictive* than that of state agency psychologists Drs. Maddox and Akeson. The ALJ properly evaluated the medical opinions; treatment notes of Mr. Westhoff and others; and Belcher's statements regarding her daily activities, and concluded she was capable of performing a restricted range of simple work despite her mental impairments. Thus, Belcher has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

                                        /s/ *Abbie Crites-Leoni*
                                        ABBIE CRITES-LEONI
                                        UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2024.